Ron is the second case in the morning call 210-0380 people in the state of Illinois versus Ernesto Gonzalez. On behalf of the Avalon, Mr. Darren Miller. On behalf of the state, Mr. Marshall Steeves. Thank you, Mr. Miller. May it please the court, morning counsel, Darren Miller on behalf of the defendant Ernesto Gonzalez. Your honors, in this case the defendant was found guilty of aggravated assault and resisting arrest. Prior to trial, the trial judge prohibited the parties from directly examining the prospective jurors during voir dire and our contention is that that is plain error as although defense counsel objected to that procedure, it was not preserved in a post-trial motion and under the plain error rule, of course, there needs to be error in order for there to be plain error and our contention is that there clearly was error in this case. Well, didn't he ask all the questions that the attorneys suggested to him and after questioning, after the judge's questioning of each panel, didn't he inquire of the attorneys what further questioning they wanted? I believe that's correct, your honor, but that is not the issue. The issue is whether it was error to allow, to prohibit the direct inquiry, not specifically what questions were asked. And is there any case, does Garstecki say there has to be direct inquiry? That there has to be direct inquiry? Right, you said he prohibited direct inquiry. Well, what case says, if you look at, I'm sorry, what case says there has to be direct inquiry? If you look at Garstecki, what Garstecki says is that, yes, I guess, I don't know what it specifically holds that there has to be direct inquiry, but it holds that Rule 431A requires the court to go through an analysis. And if you read through the rule, it says the court shall permit the parties to supplement the examination by such a direct inquiry as the court deems proper for a reasonable period of time depending upon the length of the examination by the court, complexity of the case, and the nature of the charges. So- Did the court put its consideration of those factors on the record? Here? Here. No, absolutely not. Was it required to put it on the record? Yes. By what authority? Allen. This court's case in Allen. I think if you look at the Allen case- Before you answer that, when the defendant's attorney said, can we do this, and he said, no, it's my regime, what do we interpret that to mean? That 431 doesn't really mean anything to me, or I can disregard it, or I've done this instant computation and I've weighed all the factors and based upon not only, maybe he meant a regimen instead of a regime, but a regimen. Well, that's possible. I could go by the record, Your Honor. I mean- What's the standard of proof that you need with respect to it, assuming the court violated a rule? What else do you have to show to get a new trial or reversal? What if you had a case that was just 100% the evidence showed guilt? 100 people that looked at it would say guilt, no doubt 100% guilty. And the court disallowed direct examination of the jury. Would that be reversed and sent back for a new trial because of the violation of the rule? In other words, what else do we have to show besides the violation with respect to effecting, getting this case remanded for some purpose, some other purpose? I would say that you look to the second prong of the plain error rule and whether there's a clear error, which there was here. I mean, the rule in Garstecki and Allen are clear that a court has to consider these factors and you can't just- Well, don't you have to show bias or prejudice? Not under the second prong of the plain error rule. In that case, you just need a clear error that affected the fairness of the trial and the integrity of the judicial system. Well, we don't even have that for subsection B under Thompson, right? I'm sorry, I don't- For a violation of subsection B, 431B? A. I know, but I'm talking about the Thompson case. I believe I've, I think I'm referring to the recent Supreme Court case that talked about whether it was plain error to violate that section. Right, well, I think what you have- And here, A, talks about the trial judge having discretion. Yeah, I think what you- I think the problem here is that there was a blanket policy. In other words, the judge said, hey, this is a new regime. In my courtroom, no attorneys get the chance to speak directly to the jurors during voir dire, and that's absolutely improper. And not only did he make a mistake, he says that it's his courtroom's policy to ignore the Supreme Court rules. So I think that implicates due process and equal protection concerns when a defendant goes, is in a courtroom, and he has the unfortunate luck of being before a judge who has decided to make it his policy to disregard the Supreme Court rules. And I think that goes to the integrity of the judicial system. I think in that way, it's distinguishable. Catherine, did you have your question answered that I interrupted you during the voir dire? No, that's all right. Go ahead. Go ahead. Thank you. Justice Bowman points out that if 100 people out of 100 people would have found this person guilty, he's essentially saying, I think, that the evidence is not closely balanced. And your response was, yes, but the integrity of the system is such that something needs to be done. Is that correct? Correct. Well, aren't there other ways to skin this cat? Maybe a complaint before the Judicial Inquiry Board or a suggestion by the chief judge or the PJ of the particular division that this kind of action is not consistent with the law, and maybe there should be some consideration of the factors such that there is an alleviation or remediation, but it doesn't result in an automatic reversal, as Justice Zeno said when she said that under 431B, it's not a structural error, and therefore, you have to prove prejudice. Yeah, I mean, obviously, there are other things that could be done, but it's our contention that it is a structural error because when you go in, that a court just can't have a black blanket policy disregarding the Supreme Court rules. And that aside, in this case, the evidence was closely balanced, so that's completely theoretical as to what would happen if there were 100 percent evidence of guilt. Here, it's the officer's credibility was crucial, and it was imperative that the defense attorney be given a chance to evaluate that. Yeah, that can be done in part through the judge asking questions, but it's also important, and this has been determined by the Supreme Court, which says, if you look at the rule, it says the court may permit the parties to submit additional questions, but shall permit direct inquiry. So they've actually given more importance to the direct inquiry aspect of voir dire than they have of defense counsel proposing additional questions. Doesn't it say shall in its discretion? I don't have it exactly in front of me. I can get it. Aren't those words in there someplace? No, it says shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time, depending on the length of the examination, the court complexity of the case, and the nature of the charges. And Garth Stacking in this court in Allen held that you have to consider those three factors. Of what significance is it that the defense exercised all its peremptories? Is that significant in any way? I'm not sure that it is here in the traditional case when it's a jury issue. You'd have to exhaust your peremptory challenges in order to preserve the issue. So I think to that extent, it's relevant. Which do you think is more paramount or important for a defendant? The jury be admonished about the factors relating to presumption of innocence and not the need to testify and nothing should be taken against him for failing to testify and those other factors vis-a-vis allowing an attorney to make further inquiries? Well, I guess I'd answer that question by asking you a question, which is are you talking if there is the, is it a complete disregard of those factors? In other words, are they admonished during jury discussions? Well, my question to you is would it make any difference if the area of inquiry was de minimis versus an area of inquiry that was very substantial that related to the main contention in the defense relative to impeachment or incompetency or some sort of prejudice, such that the failure of the court to allow inquiry would be more egregious as opposed to follow up on Was the DUI that you were convicted of, was it five or ten years ago? Yeah, and here the problem is, again, it's the police officer's credibility is everything. If you get a panel of jurors who are like, yeah, we love police and believe everything they say, he's guilty. If you have a panel of jurors who are like, well, we don't necessarily believe everything that the police say and we're going to listen to all this evidence and look at it closely or even have someone who maybe says, hey, I don't believe anything that the police say, all that plays a crucial role here. And it's that personal contact with the jury that is important here. And it's been recognized by the Supreme Court. And as I had my brief, Lafayette recognized the importance of that also. So I think it is crucial. And the other problem is once that's denied, the personal contact is over. There's no remedy. You can't instruct the jury like you can for the other factors in subsection B. If you miss those during a plot here, well, you can just tell the jury, you can instruct them before trial. I'm sorry, counsel. I missed this last point that you're making. Well, there's no remedy. If there's a rule that says you cannot, that a court has to allow a direct examination of the prospective jurors or at least after evaluating the factors, if that's violated, if you're going to find that there's error, there's no remedy at the trial to make up for it. Once the defense counsel is prohibited from directly speaking with the jurors, there's nothing that can be done to remedy that. So I think that distinguishes this from the subsection B and Xer type of errors because there's no way to cure this at the trial level. But at any rate, Your Honors. Do you believe that the evidence was closely balanced? Yes. And I mean, obviously, if you take it from the perspective that we're going to believe everything that the police say, it's not closely balanced. But then how did this error alone severely threaten to tip the scales of justice against the defendant? That's what also has to be shown, right? Well, you have to show that it's closely balanced and that it threatens. So can you explain how that applies here? Yes. Again, this is a case where the credibility of the police officers is crucial. And there are circumstances where a defense attorney will be able to ask questions directly to the jury, whereas a judge, even if they ask the identical question, you can get a different response because, quite frankly, jurors can be intimidated by judges. And if a judge says, are you going to follow the law? Yes, yes, yes. They're less intimidated by the jurors. Did the judge ask a question about the relative levels of credibility vis-a-vis police officers and other parties or other individuals? I believe that was touched upon. But, again, the issue is the direct inquiry aspect of this. What you're saying essentially is the attorney, if he is given the opportunity to ask a question and interact with the juror or the prospective juror, the lawyer can read body language, such as whether or not the person will look directly at the lawyer, will lower their voice, will lower their head, will turn away. There are nuances that lawyers can pick up for purposes of a peremptory challenge based upon an answer given to a question that wouldn't necessarily arise by a question directed by the court. Absolutely. And even if you ask the same question, they have to answer it at least a second time. And maybe the answer might be a little bit different. Now, what if it's... Oh, I'm sorry. Go ahead. I'm sorry. If you ask the question in a slightly different fashion, something may click on the jurors that's like, oh, I meant to answer it this way. Well, I think that's the reason why 431A is designed, written the way it is, is to allow the ability of a lawyer to get some feel for prospective jurors. The only question is whether or not, having failed to perfect the error, and we're now dealing with plain error, whether or not your client has a meritorious case. Right. And our contention at least... She has a question. I'm sorry. If the trial judge had said to the attorneys, I'm going to allow each of you to ask one follow-up question to each juror, would that still be a violation? And only one. That's my new regime. One and only one follow-up question. Is that an error? I would say given the facts, those specific facts, yes, because the judge is required to consider these factors. So if it's his new regime's policy to only allow one question without consideration to the factors in 401A, then yes. Okay. But if he had said, well, this is a really simple case, and I'm going to ask extensive questions, and I don't know, maybe we had a class 4 felony here. So that would not be error? Well, that would be an abuse of discretion standard. Then I'd be looking at whether the judge abuses discretion. Okay. So, yeah, definitely would be more difficult. Okay. Thank you. You'll have an opportunity to make your vote. Mr. Stephens. Good morning, Your Honors. Good morning. You may proceed. Okay. Well, I think we have the outlines of the argument. Did the judge have to make it explicit on the record that he knew that his exercise of jurisdiction? Keep your voice up, please, counsel. Excuse me. Did the judge realize that his exercise of discretion required him to lean in favor of allowing direct questioning? I think, Justice Zeno, if you asked the question, were there any cases that said that that had to be on the record? And I don't believe that there are. Both in Allen and Garstecki, that was gotten from the record. We don't have any disagreement about the principles of the law. They were set out in Garstecki, and we're just talking about application. So it really is whether or not the judge views his discretion as the standard of review. Does the state agree that this is a closely balanced case? I don't think so. If you look at the evidence, it's not just the word of the officer that he called out and announced his office. The defendant didn't testify, but his girlfriend did, and she gave a version of events which was inconsistent with the officer. She said that the officers related that they engaged with the defendant, they started struggling, and then the fight wound up on the ground. The defendant was on his hands and knees. Isn't it basically one story against the other story? But it's her story against the police story. It's the defendant's story, and the defendant's story through his girlfriend, who he relied upon to support his theory of the case, is inconsistent with the facts. And the facts are, if there was this supposed struggle on the ground, on hands and knees, as the police said, then the evidence is consistent because he had scratches on his hands and on his knees. She said something completely different. She said that he was already handcuffed, and then the police punched him, presumably in the front of his body, and then he fell to the ground. Well, he should have grass stains and not scrapes on his hands and knees, and he should have bruises on his face or his body. And they documented all the evidence. She documented for the defendant all the evidence of his injuries, and that was inconsistent. So it was not simply a case. Police were... Well, was it proven wrong that they take photographs of his alleged bruises that were nonexistent? Answers? To say something's contested doesn't necessarily mean that it is proven to the contrary or not proven to the contrary. So when she says that he had bruises, did the state rebut that with photographs of the... She took photographs of him, and there were photographs that showed scrapes on the back of his hand and on his knees. I believe that's my recollection. I did take a look at them. I don't believe that his face was marked up, and they didn't... She didn't say, and it seemed to be that she was his girlfriend, and on intimate terms with him, that he had any bruises on his torso that would have been consistent with that. Does the fact that the police were in plain clothes have anything to do with it? It would have been better if they had been uniformed, but there's also a picture of the police that you can take a look at in the record that we referred to. She took the pictures, actually. Did they tell him to stop in Spanish or in English? I don't recall. Is he monolingual or bilingual? Since he didn't testify, I don't know that we would be able to... Did he have a translator at defense counsel's desk? I don't know that the record reflects that. I would point out that it was Detective Aloa. So I would... How would you resolve the problem of a judge who says, this is my regime, and there are no other questions to be directed by... No questions to be directed, or one question to be directed by either the state or the defendant. Why isn't the state agreeing with defense counsel that, hey, the state has a right to ask questions as well as the defendant does? Why are you doing this? Actually, the new regime question came in response to the prosecutor's question. You mean I can't ask a question in the new regime? Okay, so what does new regime mean? Does it mean there's a blanket policy? I don't know. The defendant asks you to speculate that this means that we have a renegade judge. Well, I wouldn't go so far as to say he's a renegade. On this point... You may have misread Garcecki. Garcecki. Yeah, that's a tough one. On this point, though, the defendant is saying that he, you know, he's... Let's drop the descriptives and just say he's not following the rule. I don't think that there's enough evidence to say that he's not following the rule. As I said before, no case says that he has to put his calculation on the record. Garcecki, unfortunately, has the consideration that the judge there proved that his heart was pure because he did allow direct questioning of eight of the jurors. However, he did not allow questioning of four. Since that happened, you know that he was exercising his discretion. Well, it's inferred. Same thing. Intent is very subjective. Same thing for our purposes, I think. So let's go back to Allen. Well, that's where I was going, to Allen. Did the judge's method of voir dire, and if we look at whether or not it abused its discretion, did it allow, was it a means employed to effectively test juror impartiality? Isn't that what Allen says has to be done? Means employed to test juror impartiality have created a reasonable assurance that prejudice would be discovered if present. Precisely. Yes, I agree with that completely. So how would that apply here? Why didn't the judge abuse his discretion? Because the whole voir dire process was a completely collaborative and interactive process. Well, it's interactive with the judge and the attorneys. Yes, between the judge and counsel. After, I believe, every juror, he asked if they had any questions, and then if they had any follow-up questions. If you get back to Rule 430A, 431A, the whole point of the rule is, as you said, to identify a jury that can be impartial and, I would say, throw in, competent. And the judge's actions here, on his own, for cause, he found one juror who couldn't, I believe they had a problem with the police, and then another juror who had problems with understanding English. So he was, I was very impressed with Judge Johnson's examination of the jurors. It was expeditious and it was very probing. And, as I said, it was interactive so that the counsel were able to investigate any aspects of the case that they, from their personal knowledge, would have known would be relevant in the jury's determination. I would disagree that there's any indication in recent cases that personal interaction with the attorneys is thought to bring out any particularly valuable information. I think that's inherent in Garstecki because Garstecki says the judge, considering the type of case, can just say no. Hopefully he would have explained why, because he's considered the length of his own examination, or the one, presumably, that he intends to give the nature of the case, complexity, you know, the nature of the charges and the complexity of the case. Well, the judge didn't do that here, obviously. That would be preferable. No, he did not do that. But he's not required to do that. Well, our case doesn't even approach Allen, though, in the sense that in Allen the judge denied it, saying it's not necessary given the nature of this case. So we don't even have the Allen situation, right? I'm not quite sure what you mean. I think this is way better than Allen, because in Allen we don't. Well, in Allen there was mentioned by the judge of one of the Garstecki factors, at least as reported in Allen. Right. Okay. Here we don't have any on the record mention that the judge considered any of the Garstecki factors. Right. So we don't know if in Allen the judge did the same sort of interactive and collaborative with the attorneys voir dire that was conducted here. I mean, you can consider a spectrum. I mean, there's the spectrum which we know is wrong where the judge doesn't ask any questions. He only asks a few of his own questions. That's the minimum. Then you can have – I mean, if you don't have direct participation. Then you can have the judge asking so many of the defense and prosecutor's questions through him that he's almost a ventriloquist dummy. These were misdemeanor convictions, were they not? I think so. Would it make any difference if they were felony? I don't think so. I think the standards are the same. I mean – If you don't have anything to say, you can sit down. I'm sorry? It seems like you are running out of things to say. No, I have too many things to say. Okay, then keep going. I did want to say further that I did want to highlight that it is true that this is not a constitutional case. And that for plain error purposes, as Justice Zenoff was analyzing, it's not even as strongly held of a right of the defendant as is in Thomas. Are there any further questions? I don't have any. Thank you. Thank you. Mr. Miller. I have just two basic points I want to address. First of all is whether or not the judge is required to put the analysis of the factors on the record. And I think when you look at Allen, and I can read right from it, when the court denied defense counsel's request to directly examine the witness, the court said that's denied. I don't think in a case of this nature it's at all necessary. And moving on to this court's analysis, and I'll quote, So the trial court's rather abbreviated comment gave no indication that it had in fact considered the complexity of the case or the nature of the charges and determined to deny the defense attorney's right to question the prospective jurist directly. So Allen considered that it's required to be put on the record. And also Garsteki and Allen both note that there's a presumption in favor of direct examination. So if a court's going to go against a presumption that an attorney should be allowed to directly examine the witnesses, it has to put on the record why it's doing so. But in Allen, the court didn't reverse. It did not reverse, but it found error. So right now I'm just talking about the error aspect. And secondly, going to the closely balanced nature of this case, although predictably the prosecutor feels that it is not closely balanced, I note that the jury would disagree. They actually had two questions by the jury or two notes in the first one. They asked, well, what do we do if we have a verdict on one but not on the other? So they were obviously struggling on whether he's guilty or innocent. Now, it's speculation, but I would be guessing that they were struggling with the aggravated assault charge because if you look at the facts of the case, you had the defendants outside working and a man comes from behind them screaming stop or whatever. I believe the defendant might have been walking toward him at that point. And he turned and walked away. And then the officer grabbed his shoulder and the defendant swung around and threw the punch. That's the aggravated assault. Now, the officer said, oh, I said stop police. But the jury was completely, had complete discretion whether to believe that or not that he even said that. And there was also no indication the defendant would have heard that or as Justice McClaren kind of pointed out, whether he would have understood it due to some language barriers. So my guess is that was the charge that they were struggling with. So it clearly is a closely balanced case. It's the credibility of the police. It's word against word. And I don't know. It's hard to think of a case that's more closely balanced. It's either you believe the police or you don't believe the police. Well, they could have found him not guilty of the assault charge and guilty of the other. That might have been a little bit more closely balanced. I'm sorry? I said it might have been a little, your argument might have been a little stronger had the aggravated assault been a not guilty instead of a guilty but with a question. Right. But this is why I think it's important that, hey, if there had been one juror who maybe had a different point of view, which could have been fared out through a direct examination, that could have changed the outcome of the case. And I think that's why it's so important. And when you look at that, probably a closely balanced case, you just need that little bit to put it over for plain error. So based on that, I'd ask that your honors reverse my client's conviction and remand for a new trial. Thank you. Court's in recess. We have more cases on the call.